Case No. 24-1278, Gerald Novak et al. v. William Federspiel. Oral argument not to exceed 15 minutes per side. Mr. Ellison for the appellate. Yes, hi. Good morning. Philip Ellison appearing on behalf of the appellant. Good morning. Good to see you. One of three for you today? No, actually this one's just one today. Last time I had three scheduled at the same time. Last time I was here a month ago. Oh, I'm getting, it seems like you have the market cornered. No, I have a well-worn path to Cincinnati. That's for sure. I'm joined at council table by Thomas Lambert, who is joining me on this case as co-counsel. I'm reserving three minutes for rebuttal. Very well. I'd like to make basically two very small points and of course, answer any questions that the panel may have. I think this court should model itself on the Freen decision from the third circuit. I think Freen provides this court an excellent pathway. I try to convince Judge Ludington to follow Freen as the guiding principle in the case. And he simply did not agree with that. I don't understand why not, because I think it's the bright path given that this circuit does not recognize the fourth amendment as a viable claim to go forward in these circumstances. Second, you mean, or fourth?  The fourth, the fourth, excuse me. Freen's second, or Freen. Are you talking about Judge Bevis' opinion? So, all right, let me, let me, let me hit reset on that. Freen is a third circuit case, but provides a fifth and second amendment remedy. However, I think the fifth amendment remedy is the right one here because this circuit does not recognize the fourth amendment claim as a viable pathway going forward, given the Fox decision. I think that's a fourth amendment, fourth amendment. Does that knock out your second amendment claim? It doesn't knock out the second amendment claim. It's just what pathway this court can go down in these various circumstances to provide relief. And why does it block the path? I mean, well, it blocks. I think the fourth amendment provides the best analysis and the best mechanism by which to provide relief in these particular circumstances, except Fox precludes it. You're bound by Fox that says there is no fourth amendment claim in these circumstances. I think it's wrong. I've raised it to preserve it. I don't want to spend a ton of time on it because I don't think, I don't think that you guys can do anything with this. But the reality is, is that I think it's the best way to do that. But if it's not available, freeing provides a fifth amendment route from the third circuit to provide that relief. And I would ask this court to do so. Now, did you brief whether your friend on the other side argues that that claim should fail because there isn't an apparent public purpose for the continuing detention of these firearms? And I mean, I guess, did you really address that in your brief? Because I'm not sure if I saw it there. Well, what do you have to say about that? Well, I'm arguing what error Judge Ludington made below. And the very narrow and only argument, or excuse me, our conclusion that Judge Ludington made is that there is no fifth amendment claim because there's no fifth amendment violation when you take the property at the seizure. Look to Jenkins. Jenkins provides this court with the exact argument I'm making. It's not that it's wrong that they took the firearms on the evening of October in 2017. It's that once the criminal prosecution and sentencing and all of the probation was completely over, at that point, federal law, this case, this circuit's court in Francis, I've cited Washington. I've cited all these different cases that say at that point, that private property, while the government has the right to possess it, it doesn't become the owner of it. And at that point, it needs to be returned. The sheriff didn't return it. And of course, the argument I keep hearing from brother counsel is, well, file this motion, this magic motion, as I like to call it in my office, it's the 4705 motion back in the criminal court. We tried that actually. And I point to this, I can point to this court. It's, you can look at in the record at 13-11, where we brought that particular motions, page ID 114, or excuse me, 1415 to 1416. And Judge Clark, who sits in that court, says, you can't bring that. The criminal case is closed. You have to bring a claim in delivery, which in Michigan is our repleban action, which is what I did here. A forfeiture claim, did you attempt to bring a forfeiture type claim in Michigan State Court? I thought one of the state court decisions suggested that you bring that type of claim. They suggested I bring something in the district court under the on-the-bus forfeiture action. The problem is, if you read that case very, if you read that statute carefully, I, as a private property owner, cannot initiate forfeiture proceedings. And if you think about that, it makes sense. I'm not trying to forfeit my property back to myself. I'm still the owner of that. The government has to initiate that. And in this case, the sheriff has disclaimed any opportunity or desire to forfeit the firearms into his possession or into his ownership. Mr. Ellison, I'd like to go back to your takings question and talk about this, the public use part. Whose burden is it to show a public use? Because it seems odd to me that it would be your burden. Isn't this just, is this how the takings clause works? In order to take the property in the first place or to retain it after a lawful taking, the public use is the justification. It's like the government's defense. And then if the government has established that defense, it still has to pay. So isn't it odd that you would have to show the public use in order to have a takings claim? It seems like in Kelo, they couldn't have even brought their claim that way. I agree with you. And I'm going to take a half step back and then a big step forward to answer your question. If the government is taking private property, it does, meaning it doesn't do a forfeiture. It doesn't do something traditionally that transfers title from a private property owner to the government. The government can only do one of two things. They can take property, but to take that property is a condition because the Fifth Amendment is called a conditional right that the government has to take property. You have to condition it on two things. One is there has to be a public purpose, as you identified, and you have to also pay just compensation. And so the government has to show both of those? Both. Correct. And if you don't bring both, that is what triggers my right then to go into federal court with a 1983 Fifth Amendment. You violated my Fifth Amendment right. You didn't have a public purpose, which is one flavor of a takings claim that you don't see those very often. It can't be that because there's no public purpose, you lose. It would be because there's no public purpose, you win. Correct. I mean, it would actually, arguably, and certainly the property owners in Kelo argued, it means you have to give the property back. Correct. You have to take it. I mean, that's the upshot of not having a public purpose is they have to return it as opposed to you lose your takings claim. Correct. And we never got to that below just because the judge, Judge Ludington, focused on, well, when they took it in the night of October of 2017, the government can take possession. And we never disputed that. Of course it can take, and when cops react to a scene, you gather the evidence, you gather the items that are necessary for the prosecution. But in Jenkins, and Jenkins is the case I would like this court to focus on because it clearly delineates. It's the federal court of claims case that delineates those two. The other point I would like to make, unless the court has any other questions in this part of this, would. I mean, I kind of, why didn't, I'm just like fairly amazed that we're here at a federal court of appeals argument talking about 12 shotguns from a hunting cabin that were taken as part of a domestic disturbance years ago. And that did not get reasonably worked out so that it's a federal case. And we have other cases today, and this case has taken a fair amount of time. And I'm just wondering, like, why is this here? And I'm not necessarily blaming you because you're trying to get the guns back. But in your view, like, why didn't this get resolved in some non-litigation way? Why didn't this get resolved by this claim and delivery business, which does seem to just turn on ownership at the end of the day? Why are we here talking about takings in federal court, in your view? Why are we here? Because the two other times I tried to activate the machinery of state court, I ran into the same council blocking, you know, arguing to the state court judges, don't give the firearms back. But wasn't a part of it that, I think one court said you sued the wrong entity. You sued the office rather than the sheriff.  Well, I mean, the difficulty is, is that the broader point, I guess, to make this is that the reason why this case is here is because there is a policy and practice in, and why I filed the, I asked for discovery in Monell. There's a policy and practice of the sheriff's office to simply take all sorts of property and keep it. This is not, it's not just these guns. This is a regular going aspect. It's a profit driven enterprise for this particular law enforcement agency. So effectively, this is a, this is a, this is the point, this is the point of the spear for that practice within that particular law enforcement. So they haven't tried to take ownership of these guns. They want to give it back. They're just saying that you, and I understand you dispute this, but they're saying that, you know, your clients haven't shown that they own the guns. That's, that's a perfect segue to the second point I want to get is, is that, um, um, my second point. I wanted to make this morning is, is that I judge Ludington, I think misapplied the standards that's required for me to show ownership. We supplied affidavits, declarations multiple times in multiple circumstances. This is, we are the owners of the firearms. The allegation is of course the implied allegation. Sometimes the overt allegation is that we're the cutout for Mr. Heinrich, that we're trying to get, we're relying and saying there are guns when they're really Mr. Heinrich's guns. You have the sworn declaration of Mr. Heinrich that says these are not my gun. So I understand that and that seems sufficient to create a genuine issue. Um, but don't you think the government is entitled to discovery to depose your clients to see whether there's inconsistencies in their statements, whether they're lying? Like I, I, I have no problem. They've never asked for it. They've never asked for discovery. They've taken the position that they call this the say so affidavits just on our say. This is, they're supposed to be in the world of 12 gauge shotguns. That's exactly what you, you, you, you cut me to the point, right? I was going to make here is, you know, I use guns are one thing. Well, and just very briefly, the handgun, there's this argument that there needs to be a license I've addressed in the brief. There is no license for this kind of antique firearm under Michigan law. And that's been undisputed. There's no allegation and there's no evidence that's been presented by a Sheriff's office and their insurance council. We both have vast resources to challenge all of our affidavits that we've been making and submitting for years and years and years and all these different proceedings. Never once have they come back. And in fact, they conceded to this court that they have no contrary evidence. And of course it's standard civil litigation that when one side brings an affidavit in a motion for summary, it is the burden shifts to the Sheriff to present evidence, to create that genuine issue of material fact. And, and you're saying they never asked for discovery so they could depose your client so they could see, you know, are you lying? Correct. Correct. And not only that, they had the full resources of a law enforcement, a major law enforcement agency in Michigan, Saginaw County. I know you're from Michigan. It's a, it's a fairly good size, Michigan County. I'm from Michigan. Fair, fair enough. Fair enough. We've run into each other at the airport. That's fair enough. Meaning this isn't an up north, upper peninsula County with one Sheriff, you know, and a part-time deputy. This has a professional law enforcement agency that could have been. They do too up there. Come on. Fair enough. The resources are greater there, I guess is what I'm trying to get at. And they, they have not, despite years of my screaming that they are in fact the owners and disclaimed all of their arguments that way.  I, I have another question. Um, you have conceded away or waived many of your personal capacity claims, but I'm not quite sure about which ones you think are still personal capacity claims that are alive. So could you clarify?  So the, so I'm the backup ticket again, half step back, full step forward. Judge Ludington only dealt with qualified immunity in the second amendment or yeah. Second amendment claim. We waived only the second amendment qualified immunity claim because Bruin is fairly new. I mean, the reality is, I mean, I could try to argue, I can't get to clearly establish under the new Bruin standard. So, but that doesn't waive qualified immunity is only protection for damages. It's not protection from injunctions or declarations. You can get that relief and it's not a defense under official capacity claims, which we have here as well. So in other words, but just so we're clear, your personal capacity claim with respect to the second amendment Bruin claim, you've waived, but not with respect to your fifth amendment claim. You're whatever process, all of that. Okay, correct. That is correct. That's what procedural question. Has discovery closed in this case or are these kind of summary judgment motions kind of just right out of the box almost or something? Well, largely that because there was prior to prior cases and we have all the evidence, the only person that asked for discovery was me on Monell because Monell is not an element of state of any state law claim. And when I came to federal court, I needed to get, I wanted to establish that the longer this, this policy I'd call the longer we keep the guns, the better policy to establish that that was not the rogue actions of the detective, but in fact, a normal working policy. I get wink, wink. It is for me, you know, was there, I mean, was there a scheduling order? No. Okay. That's good. Yeah. And the reason being is because just to add to this, is that because the judge Ludington, Colorado River, this case before the sheriff even showed up when we initially filed the suit, which led to an appeal to this court, where judge Sutton reversed and sent it back. So anyway, there we go. Unless the court has any other questions. It's Mr. Curly. I'm sorry. Right. That we're going to, yeah, I'm, I'm sorry. Okay. Thanks for your rebuttal. Good afternoon, Mr. Curly. It's good to see you again. I get, thank you. I can, the court can hear me. Yes, sir. Okay. Thank you. I appreciate the indulgence of chemotherapy is taking its effect. They tell me it's working, but of course it makes you sicker before it makes you better. Wow. I look more ragged each time I do these. Um, I think first as a preliminary matter, let's remember that what we're dealing here was not a lot lost wallet. It's not a stolen bicycle. It's not a car that was picked up at the side of the road. We're dealing with, with, with a set of guns. Uh, and what we've got is the plaintiff did go to Michigan state court twice and both times the court rejected their claim. Uh, they were told by the circuit court, two things. One, they were said, if you want to recover, you use the statutory procedure for it. 600.4705. It says that the person, if they were not involved or consented to the crime, they can move the court having jurisdiction to return the property. It then becomes the obligation of the prosecutor or the city attorney to defend the retention of the property. It's not the sheriff who's involved in the process at all. It's up to them by the directive of the circuit court to go and use this process where the matter would be hashed out. Proofs presented between the prosecutor for Saginaw County and the plaintiffs. Instead, they tried claim and delivery, but both instances in the circuit court, the court said you don't have sufficient evidence to enter claim and delivery. Even if this were the proper forum, when they went to the district court, they did not proceed under the statute. They instead filed claim and delivery. And that's why the district court indulged that they said, what you pleaded was to claim and delivery. I'll indulge your choice. But that court said, there's just way too many fact issues for me. I mean, just way, way, way, way, way too many fact issues as to your supposed ownership. And what they were working off with the same affidavits, the same declarations that were then submitted by the plaintiffs in this case, it's the same material. So what the sheriff's got is two state courts, both saying that there is no proof of ownership, not no proof, not it's not, not proof as a matter of law. Isn't that fair? Well, it certainly was deemed inadequate in and of itself as a matter of law. I mean, it sounds like they want a trial or, you know, on the issue of ownership. And if there's way, way, way, way too many fact issues, normally we don't grant summary judgment on those questions. That's true. But in this case, remember we, the motions were competing motions for summary judgment. And in that situation, it's time for the plaintiffs and this court's warden Cox to put up or shut up. Well, I mean, the court can say you're both wrong. Yeah. Okay. I mean, all they produced were the same affidavits and the same declarations that the two state courts had said were not sufficient. So if all they put up is what two courts have already said was not sufficient, there shouldn't be any need to go and prove otherwise. They simply failed to meet their burden. We've got two state court judgments that are already binding on the court. If we set to one side, raise judicata for a moment. If we determined that these affidavits create a genuine issue of fact as to whether these plaintiffs are in fact the rightful owners of these weapons, then why shouldn't we vacate some of the district, vacate some of the district court's judgment as to some of these claims that have already been made? These claims like claim and delivery and maybe the constitutional claims we were talking about. Well, of course, I'm leaving it on the side, raise judicata here. The reason is I think it's still inadequate, even under the federal law. If you look at the Savoy case- You don't think it creates a genuine issue of fact? Pardon me? You don't think it creates a genuine issue? I mean, I guess, like, what proof do you think is adequate? I mean, I'll be candid with you. So I've got, I have a Mossberg 500 I bought 30 years ago in Virginia. If the sheriff took that from me, I have no idea how, frankly, how I would prove my ownership other than, you know, my say so. Maybe I'm just ignorant about a record that's filed away somewhere. So, but what, what proof should they be offering or should a citizen in this situation offer beyond, hey, you know, my grandfather bought that gun in 1945 or I bought that gun 30 years ago? Well, it certainly would have helped if they'd come up with a corroborating witness for their affidavits rather than just- Okay, but I don't, I mean, let's say the person doesn't, I mean, really? The owner of the home, right? So it seems to me like there's an owner and there's a tenant. I don't know if the guy was paying rent, but there's an owner and a tenant. So the things that are in the house probably belong to one of them. And the owner has said, these are mine. And the tenant has said, these are not mine. So I don't, I mean, it seems to at least create a genuine issue of whether they're both telling the truth. I mean, all you have is they're both lying. Well, again, the situation is it was their obligation to come up with the affirmative proof under the Savoy case that they are lawfully entitled to the weapons. Uh, and they didn't come up with that proof at the time of the motion. Let's say it's not a gun. What if it's not a gun? Is this because it's a gun? So let's say there's a crime and, um, the, there's a victim who's found dead in the bed. So they take the blankets off the bed and test the DNA and then, you know, and it's same thing, owner and tenant. And then the criminal trial's over and the owner of the place is like, that's a quilt my grandmother made and I want to have it cleaned and I want it back and puts in an affidavit. It says that's my quilts and the tenant says it's not my quilts. Genuine issue. I mean, I think at least a genuine issue, right? Which is all something they could have brought up and argued under the procedure that the state circuit courts expressly ordered them. But this is the statute you use. You go in, the prosecutor will show up. You'll dicker it out with him in front of the district court, and that's how you'll resolve your claim. Because we have a state statutory procedure whereby we orderly. What about Nick? Like, doesn't Nick tell us that they don't have to go through this state procedure in order to bring a takings claim? I mean, maybe I misunderstand Nick, but that's my understanding of it. They can just march into federal court and file a takings claim. Remember, Nick, Nick is not a property return case, right? Nick is a, there's been a taking for a public purpose, and then you're looking for a remedy, a compensation after the fact. That's not what we're dealing with here. We're dealing with the continuation of the process. Let's say it's close enough. Criminal process. These were taken as part of a criminal proceeding, and now there is a specific process as part of the criminal procedure under the Forfeiture Act to go and get the property back if you were not part of the crime. That's specifically what it says, a person, this is Mishkap Laws 600.4705, a person who did not have prior knowledge of or consent to the commission of the crime may move the court having jurisdiction to return that property. So this is not an ex post facto remedy, which is what they talked about in Nick, the ex post facto, after the fact remedy, after something had been taken for a public purpose. That's not what we've got here. We've got weapons that were confiscated as part of an arrest. They were held during the course of the criminal proceedings. The sheriff has no use for them. The sheriff doesn't want them. The sheriff's just waiting for the proper owner to take the procedure to prove that. And there is a statute part of the criminal process in the district court that handled the case to return that material. It's not up to the sheriff. It's between the plaintiffs and the prosecutor to finish the criminal proceeding. And the adjunct proceedings there too. And they were told, frankly, they are bound because they were told by the circuit court, this is what you do. They just obstinately refused to proceed in that manner. If there's any loss of due process, if there's any failure, it's on the part of the plaintiffs to invoke the correct procedure. It's not up to the sheriff to decide whether their affidavits are right. It's up to the district court handling the procedure under the state statute. That's where the glitches come in. Right. But if we agree with you about all of that, like maybe the sheriff was not required to just take their say so and say, oh, well, you've shown up. You say you're the owner. The sheriff says I would like some court to adjudicate rightful ownership. But why isn't this? If we put aside race judicata, I understand you, you say this is not the right procedure for doing this, this lawsuit because race judicata. If we think there are problems with race judicata because the parties aren't the same or whatever. Why isn't this the right procedure or an available procedure? He's got a federal takings claim and a supplemental claim for claim and delivery. Well, the claim and delivery was already addressed, but as far as the taking, there's been no taking. He doesn't have it for a public purpose. The sheriff doesn't want it. He's not let's say let's say we disagree. Let's say we disagree. I don't. This isn't about the merits. Right. I mean, well, I mean, it's like, why can't we do this? Right. Right. Let's say we just disagree with some of those merits propositions. I mean, the question is, why isn't this court an appropriate forum for these federal claims? Whether they're meritorious or not, because they already have their shot and they didn't prove it. So race judicata. Well, like I say, lack of proof. I don't think the self-serving affidavits, if you look at the Francis case, we got the point. Yeah. No, we understand your view on the affidavits. I mean, they're they're they're completely self-serving. They're uncorroborated. And they're what the state courts already said weren't enough. So what is what do you think Mr. Ellison is going to tell us in response to your argument that they should go back and do this 4705 procedure? Well, he keeps. And what's your response? More to the point. What's your response to that? He keeps insisting that he can't, that he has, that there would have to, that he that he would have to initiate a forfeiture proceeding, which he can't, or that one would have had to have been initiated. But there's nothing in the statute that I that I cite there and that the circuit court sent back to you that requires the forfeiture to have been initiated by the prosecutor or by the city attorney or by the state attorney general, as would be required. All that requires is it gives you the avenue to show up regardless of whether a forfeiture has been initiated and to make your motion to get your property back. And if forfeiture is not wanted, I don't know why the prosecutor would complain about it unless, like the sheriff, he's concerned about the ownership. But again, that was where you were supposed to handle the problem. It's part of the procedure. He's just trying to sidestep. He says, I can ignore, ignore the completion of this procedure. I can ignore the orderly return. I could ignore the prosecutor. I can just run the federal court, file a Fifth Amendment claim and jump the whole thing. Now, if if he's got to use it, if Mr. Novak were to bring a 4705 action, is the sheriff or the sheriff's office going to assert raised judicata as to that action? I mean, is this just going to be a constant runaround? I don't think the sheriff's office would be a party to that. As I read the statute, the defense... Well, if the sheriff were as the possessor of the guns, would the sheriff assert raised judicata? I can't speak to that, Fudge, it wouldn't be a party. It says that defending... But let's say the sheriff was a party. I mean, you got to go with me on the hypothesis. I'm kind of asking for your assurance and I'm not trying to intimate this as an appropriate resolution. But if this thing were to go back for a 4705 proceeding, you know, it would be awfully frustrating if the sheriff's office or the sheriff himself then popped up and said, raised judicata, we're not doing this. Well, I think if the sheriff's office were involved, they would bring that up because they had their chance in the state court to bring their entire case. And as I quote in our brief, the case from Michigan law that says, if you bring a case, you basically botch your presentation. You don't get to come back and redo it with a better presentation later on. I believe that's Billups versus Banks is the case. I mean, they had every opportunity. They were told what to do. And if they botched it, it's because they didn't do what the circuit court directed them to do. So the sheriff just keeps the property forever? Oh, I expect he'd get rid of it. It's just cluttering up the closet. But again, the actual parties to the procedure or to the motion would be section 3 of 4705. If the attorney general prosecuting or city or township attorney fails to sustain the burden to keep them. So they're the ones who defend against the claim. What would happen or what would should happen under the statute is they file their motion. The county prosecutor would go in, would defend against it as he would see fit. And the result, the result would be either the court telling the sheriff to return it or not. Can I ask a question briefly? Assume no rescue, the kind of issues assume that the plaintiffs have established that they own the firearms. Just assume those two points. Why isn't this a viable taking claim and why isn't this a viable Second Amendment claim? Well, making the assumptions that they can just ignore the state procedure and bring it, I mean, that would make it a valid claim to bring and then try to prove in the federal court. I mean, that would, again, as counsel for the plaintiffs has pointed out, there wasn't completion of discovery in the court, apparently. So, and he wanted more, it would become a question of fact then to be handled by the, by the district court. But I don't think we get there because they've already got, had their opportunity in two courts. I mean, it's bizarre to me that you can go to court with a claim, then be told, no, you're in the wrong place. Here's your procedure. Go do it. Then obstinately refuse to do that and suddenly create a federal claim out of it. As we've briefed in the due process section, you can't have state procedures available, ignore them, and then that bootstrap that into a due process claim. I hope that answers the question. All right. No, that was a pretty straight answer, Mr. Curley, or Curlew. I apologize. Well, thank you for being with us this morning. We, we sincerely wish you well, and we appreciate your argument. Thank you. And tell me I'm making progress. That's good to hear. Okay. We'll hear a rebuttal. Why isn't Mr. Curlew right about res judicata? Well, why he's not right about res judicata is because, as I outlined in the brief, the first motion, the first action that was in the state circuit court, 10th circuit in Saginaw County was dismissed without prejudice. It's black letter law in Michigan. So that one doesn't count. That one doesn't count. Got that. The district, the next, I went to the district court. This is you, Mr. This is me the whole time, believe it or not. I went to the district court and I sued the Saginaw County Sheriff's department that way.  And, and I actually raised, and one of the, just like jolt to one of the issues, Mr. Curlew just said, he said, you didn't bring this motion. You should have brought this motion. I did bring that motion. It's at, in the record at 13-11, it's that page ID 1415 and 1416. Judge Clark in ruling on that, you have the transcript of that hearing, which is at 67. It's at the record number 67-8 page ID 2551. He said, you can't bring that motion because by the time we finally got notice, the criminal case was over and there was no jurisdiction anymore for the criminal court to hear anything. He said, and I said, he says, quote, you're going to have to file a claim and delivery action, which is what I did in that court. He said, you can't sue the Sheriff's department. That's not the right technical party. You have to sue the Sheriff. Their counsel said, which is Mr. Curlew's colleague from the same firm said, you have to sue the Sheriff. At this point, I said, I'm going to sue the Sheriff. I'm going to sue him in federal court and I'm going to bring claim and delivery. I'm going to bring fifth amendment. I'm going to bring second amendment. I'm going to bring all these other claims. Res judicata does not apply in these circumstances because they're not the same parties in the second case. I did not sue the Sheriff in the second case. Yeah, but I mean, wasn't it the equivalent if you're suing the department and you're suing the Sheriff and his official capacity? But I didn't sue the Sheriff. We didn't have that official capacity. Personal capacity is only a federal law function. It's not a state law function. The Sheriff's office, the Sheriff's office took the position. I did not sue the Sheriff. And under Michigan law, there's a constitutional provision that says suing the Sheriff and suing the county are two totally different things. So if you sue the Sheriff, it's in the brief. You're not going to get anything by her on that. I check it. Please check. It's in my brief. The Michigan constitution says the county is not responsible and does not answer for the wrongs of the Sheriff. And so what happens is how that's been applied is the Sheriff is a separate technical entity from suing the county. Now, federal law says when you sue the Sheriff in their official capacity, it's suing the county. We found these all this case highlights a lot of the cracks that exist when you try to put these things forward. So in short, res judicata doesn't apply. I tried the 4705 and the Sheriff opposed me there. So that's why I came to federal court, because I didn't want to do anything more in state court, because I was afraid I was going to get res judicata later on. So you're you're looking for a baker and remand for a trial on sounds like the Second Amendment, the Fifth Amendment and the claimant delivery. I think the court's in a position, given that the Sheriff has no contrary evidence, which was his put up and shut up moment. He acknowledges he has no contrary evidence, means they have failed to establish a material question of fact. Oh, that's you have to prove you have. And we I think we felt we've done that with the affidavits, but establish it as a matter of law. But if we did, if we didn't, we are at least entitled to a trial on it as a material question of fact. So we think you can go. We think this court can take the full step. But at minimum, this court should minimally and easily take at least the half step and say there's a material question of fact that requires a trial. All right. Any other questions? OK, we thank you both. Pleasure to see my Michigan folks on the bench here today. Thank you very much. Thank you both for your arguments.